UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:24-CV-00206-CRS

ROBERT RENO                                                                                      PLAINTIFF

v.

UofL HEALTH, INC.                                                                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

This action is an employment discrimination case. Plaintiff, Robert Reno, worked for defendant University Medical Center, Inc. ("UofL Health") as a nurse manager. UofL Health fired Reno in November 2023. Thereafter, he filed this lawsuit. He claims that UofL Health violated the Kentucky Civil Rights Act by firing him based on his disabilities. He also claims that UofL Health fired him because he sought FMLA leave, which he took in the wake of having disclosed his disabilities.

UofL Health has moved for summary judgment on both claims. It has made three main arguments: (1) Reno should be judicially estopped from prosecuting this case; (2) Reno has failed to establish a prima facie case with respect to both his claims; and (3) Reno must but has failed to show that UofL Health's proffered, non-discriminatory reason for firing him is pretextual. Reno has filed a response in opposition and UofL Health has filed a reply. Thus, the Motion is ripe. For the reasons set out below, UofL Health's arguments fail to persuade. As a result, the Court will deny its Motion for Summary Judgment.

### BACKGROUND

**A. Facts Relating to Judicial Estoppel**

UofL Health's judicial estoppel argument is rooted in Reno's collateral bankruptcy proceeding. At the outset, UofL Health asserted that that Reno should be estopped from

prosecuting his discrimination claims because he failed to disclose this lawsuit in his bankruptcy case. Motion, DN 21-1 at PageID# 83. In response, Reno demonstrated that he did, in fact, disclose this lawsuit by amendment and so UofL Health's argument had no basis in fact. Response, DN 26 at PageID# 329–30 (citing 06/24/25 Amendment, DN 26-9). Apparently, Reno's disclosure which came some three years after his petition was filed and after his Chapter 13 plan was approved drew no objection from his creditors, the trustee, or the bankruptcy court.

Nevertheless, in this case, Reno's showing forced UofL Health to abandon its initial argument. Accordingly, it made a new argument in its reply brief, relying on different facts and different law to support its argument. Now, UofL Health contends that Reno's conduct still smacks of dishonesty, and he should still be estopped from pursuing his case. Specifically, UofL Health contends that Reno would not have disclosed this lawsuit but for UofL Health's having called him out on it during this case. Reply, DN 29 at PageID# 437. Thus, according to UofL Health, Reno never acted with candor which warrants estopping him here. *Id*. at PageID# 438.

B. Facts Relating to Reno's Discrimination Claims

    1. Reno's Qualifications and Job Performance

The record before the Court shows that Reno is an experienced nurse who was promoted twice by UofL Health. In fact, he had over nine years of experience when UofL Health hired him in July 2020. Resume, DN 26-2. During his first year of employment with UofL Health, he was promoted to a charge nurse, then to shift coordinator, and finally to nursing manager. Reno Dep., DN 26-1 at PageID# 350. Reno worked as a nursing manager for the next two years without complaint, without disciplinary action against him, and having been told he was performing well. *Id*. at PageID# 364.

**2. Events Preceding Reno's Termination**

In late August 2023, Reno's supervisors received a complaint from a staff member about his leadership and management style. Email, DN 21-3. As a result of this complaint, Reno met with his supervisors. Reno Dep., DN 26-1 at PageID# 357. In that meeting, it was decided that UofL Health would hold focus groups to collect feedback from Reno's staff about their experiences under Reno's leadership. *Id*. Shortly thereafter, Reno met again with his supervisor. Reno Dep., DN 26-1 at PageID# 357. In that meeting, Reno disclosed he had anxiety and explained that it had been increasing, which was impacting his work. *Id.* at PageID# 360. Reno's supervisor suggested that he take FMLA leave. *Id*. Reno applied for FMLA leave on September 6, 2023. *Id*.

UofL Health went forward with the focus groups, conducting one the next day on September 7, 2023 and second one a few days later on September 11, 2023. *Id*. at PageID# 362. UofL Health reduced the information it learned in these groups into aggregated summaries, generalizing statements that were made without indicating much more than concerns about Reno's management style. Focus Group Summaries, DN 21-4. On November 3, 2023, UofL Health decided to fire Reno. He was on FMLA leave at this time. 11/03/2023 Email, DN 21-5. Reno returned from leave on November 5, 2023. UofL fired him on November 7, 2023. The reason it gave to Reno was that it "lost faith in [his] abilities as a leader[.]" Reno Dep., DN 26-1 at PageID# 363.

UofL Health did not give Reno a chance to improve or otherwise respond to the comments made in the focus groups despite its progressive discipline policy which applied to him and despite UofL Health's insistence that Reno follow that policy with respect to all UofL Health employees under his supervision. Reno Affidavit, DN 26-8.

3

## APPLICABLE STANDARDS

Summary judgment is appropriate when, for each claim on which judgment is sought, "there is no genuine dispute as to any material fact" and UofL Health, as the movant, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). UofL Health bears the initial burden of demonstrating the lack of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It may do so by demonstrating that Reno lacks evidence to support an essential element of his case. *Ford v. GMC*, 305 F.3d 545, 551 (6th Cir. 2002).

If UofL Health satisfies this burden, Reno then "'must set forth specific facts showing that there is a genuine issue for trial.'" *Pittman v. Experian Information Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). He must do so by pointing to sufficient evidence from which a jury could reasonably find in his favor. *Anderson*, 477 U.S. at 252.

The Court views the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to Reno. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Summary judgment may only be granted "if the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party." *Cox v. Ky. DOT*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)).

## ANALYSIS

### A. Judicial Estoppel

UofL Health's judicial estoppel arguments fail for two reasons. Its first argument—Reno did not disclose this lawsuit in his bankruptcy—has no basis in fact. Its second argument—Reno

acted dishonestly and in bad faith—was improperly presented for the first time in a reply brief. As such, the argument imposed an unfair prejudice on Reno, who lacked the ability to respond. As well, the argument is deemed waived. For these reasons, the Court declines to entertain it. *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived.").

Nor is UofL Health's contention that Reno must have acted in bad faith particularly well-taken. First, it essentially asks the Court to make a credibility judgment, *i.e.*, to believe UofL Health's assertion as to Reno's intent and motive over any response or testimony that Reno might offer on this point. Such a determination would be improper at the summary judgment stage. *Anderson*, 477 U.S. at 249.

Second, UofL Health is not impacted by Reno's failure to disclose this lawsuit. It did not expend resources to make this determination and assert the argument only to have Reno cure the problem in the wake of UofL Health's motion. Instead, the information as to Reno's disclosure was available at the time UofL Health made its motion. Third, the impact of any failure to disclose this lawsuit as a potential asset would impact Reno's creditors. UofL Health is not one of them. Yet, neither they, nor the bankruptcy trustee nor the bankruptcy court made any objection to Reno's disclosure even though it was made after his bankruptcy plan had been approved.

Nevertheless, it remains that UofL Health waived its allegations as to Reno's alleged dishonesty and bad faith by making them for the first time in a reply brief. In short, UofL Health has not presented a meritorious judicial estoppel argument.

**B. Discrimination and Retaliation Claims**

Contrary to UofL Health's argument, Reno has presented enough evidence to withstand summary judgment with respect to both of his discrimination claims. Reno's claims are based on circumstantial evidence. The *McDonnell-Douglas* burden shifting analysis applies here. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004); *Hawkins v. Bd. of Educ. of Scott Cnty.*, 716 S.W.3d 1, 6 (Ky. Ct. App. 2025). Under this framework, Reno must first establish a prima facie case of discrimination for both his KCRA claim and his FMLA retaliation claim. *McDonnell*, 411 U.S. at 802. If he does so, the burden shifts to UofL Health to proffer a non-discriminatory reason for terminating Reno's employment. *Id.* at 803. The burden of proof then shifts back to Reno to point to evidence demonstrating that UofL's reason is pretextual. *Id.* at 804.

Both prima facie showings—the showing necessary to establish disability discrimination and FMLA retaliation—require Reno to present sufficient evidence of causation as a part of his prima facie showing. In this case, that evidence overlaps. The same is true for the evidence on which the parties rely for their arguments about pretext. It too overlaps. UofL Health has challenged Reno's proof on these elements for both claims. Thus, the arguments also somewhat overlap. To avoid repetition and redundancy, the Court will address the element of causation for both claims together and will do the same for the parties' arguments with respect to pretext. Beforehand, however, the Court will address UofL Health's additional challenge to Reno's disability discrimination claim.

    **1. KCRA Disability Discrimination**

To state a disability discrimination claim under the KCRA, a plaintiff must satisfy three elements: "(1) that he has a disability as defined by the Act; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that

he suffered an adverse employment action because of the disability." *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 707 (Ky. App. 2004).[1] UofL Health contends that Reno cannot show he was qualified for the nursing manager job, warranting the entry of summary judgment in his favor. More particularly, UofL Health asserts that Reno was not "meeting h[is] employer's legitimate expectations" nor was he "performing to h[is] employer's satisfaction." Motion, DN 21-1 at PageID# 79. The basis for these assertion is UofL Health's alleged loss of trust in Reno as a manager. Reply, DN 29 at PageID#433. This is, of course, the same reason UofL Health gave for firing Reno. As such, it cannot be used to defeat the first element of Reno's prima facie showing and fails for this reason.

A court "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). Doing so "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id*. The court must instead examine evidence independent of the employer's proffered reason. *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660–61 (6th Cir. 2000). To do so, the Court must "focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Idemudia v. J.P. Morgan Chase,* 434 Fed. Appx. 495, 501 (6th Cir. 2011). Here, the undisputed record as to Reno's objective qualifications shows that he was qualified for the nursing manager job.

---

[1] UofL Health contends that the prima facie case contains a fourth element which requires Reno to show "that []he was replaced by a non-disabled person *or* that similarly situated non-disabled employees were treated more favorably." Motion, DN 21-1 at PageID# 79 (citing *Larison v. Home of the Innocents*, 551 S.W.3d 36, 41 (Ky. Ct. App. 2018)). The Court disagrees. The authority on which UofL Health relies, the *Larison* case, is at odds with the majority of decisions by the Kentucky Courts, including the seminal case, which is *Hallahan,* 138 S.W.3d 699.

7

Reno holds a Bachelor of Science in Nursing degree. He had worked as a nurse for approximately nine years when UofL Health hired him. Resume, DN 26-2. After having the opportunity to assess Reno's performance, UofL Health promoted Reno twice: first to a charge nurse, then to a nursing manager. Reno Dep., DN 26-1 at PageID# 350; *see Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 586 (6th Cir. 2002) (considering evidence of the plaintiff's promotion history to support a finding of qualification). Importantly, there is no evidence as to Reno's objective qualifications that suggests he was unqualified for his position as a nurse manager. UofL Health has certainly failed to point to any such evidence, relying exclusively and improperly on its alleged reason for firing him for its argument that he was not qualified

**2. Causation**

Reno's evidence that UofL Health terminated his employment because of his disability or in retaliation for exercising his rights under the FMLA is sufficient to survive summary judgment. Reno's burden of proof at this stage is minimal; all he "'must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (quoting *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007); *see also Norton Healthcare, Inc. v. Turner*, Nos. 2019-CA-0328-MR, 2019-CA-0569-MR, 2021 Ky. App. Unpub. LEXIS 743, at *17 (Ky. Ct. App. Sep. 17, 2021) (citing *Hammond v. Norton Healthcare, Inc.*, No. 2011-CA-000586-MR, 2012 Ky. App. Unpub. LEXIS 768, 2012 WL 5039465, at *6 (Ky. Ct. App. Oct. 19, 2012)) (but-for standard of causation applies in Kentucky); *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc).

The evidence upon which Reno relies includes UofL Health's failure to follow its progressive discipline policy, Reno's clean work history, and the proximity in time between Reno's having sought FMLA leave upon disclosing his anxiety and his termination. In addition to

these pieces of evidence UofL Health's gave Reno a favorable performance review as a nursing manager—a fact that UofL Health itself pointed out. Considering that Reno had no record of being disciplined before he was fired, UofL Health's decision to depart from its progressive disciplinary police and fire Reno outright supports a reasonable inference that UofL Health fired him because he had disabilities requiring him to take FMLA leave. *See, e.g.*, *Pulliam v. Monessen Hearth Sys. Co.*, No. 2013-CA-000138-MR, 2014 Ky. App. Unpub. LEXIS 619, at *12 (Ky. Ct. App. Aug. 1, 2014) (lack of disciplinary action together with receipt of increased job responsibilities supported inference of causation). Coupled with the timing between UofL Health's learning about Reno's disabilities and his required leave and its decision to fire him, this proof is sufficient to survive summary judgment. *See Stein v. Atlas Indus.*, 730 Fed. App'x 313, 319 (6th Cir. 2018) (causation has been inferred up to "just shy of the ten-week mark"). Stated another way, a reasonable juror could rely on these facts to conclude that UofL Health fired Reno given his disabilities which did and would likely again require him to take FMLA leave.

  UofL Health's arguments to the contrary fail to persuade. It has advanced three arguments: (1) Reno may not solely rely on temporal proximity to establish a causal link (2) Reno cannot connect his leave request to his termination because the grounds for his termination arose prior to the date on which his leave began and (3) Reno cannot controvert UofL Health's legitimate intervening reason for firing him which reason dispels any inference of retaliation based on temporal proximity. The first argument fails because Reno has not solely relied on temporal proximity to establish the element of causation. As noted above, he has also pointed to his clean work history, his consistent promotions, and UofL Health's treating him differently by failing to follow its own progressive disciplinary policy.

9

UofL Health's second argument fails because it has no basis in law. UofL Health relies on the date Reno started his FMLA leave, September 18, 2023, for its assertion that his termination could not have been in response to that event because the focus groups took place before that date. That is, the focus groups revealed grounds for termination before Reno exercised an FMLA right. Thus, according to UofL Health there can be no cause and effect relationship between the exercise of the FMLA right and its decision to fire Reno. Reply, DN 29 at PageID# 434–35. But the date on which Reno started his FMLA leave is not the relevant date. The relevant date is the date on which he asked for leave. *Smith v. ACO, Inc.*, 368 F. Supp. 2d 721, 737 (E.D. Mich. 2005). That date was September 6, 2023, *before* UofL Health allegedly established its reasons for firing Reno. Moreover, the record presented by UofL Health shows that it did not decide to fire Reno until November 3, 2023 well after he had requested and had taken FMLA leave. Thus, there is no record of UofL Health's having decided to fire Reno before he requested and then took FMLA leave.

UofL Health's third and final challenge to Reno's proof of causation is a new argument made for the first time in its reply brief. In its reply brief, UofL Health contends that the results of the focus groups provided it with a legitimate, intervening reason to fire Reno. And as such, that reason dispels any inference of retaliation that may be drawn given the temporal proximity between the protected activity and the termination. Reply, DN 29 at PageID# 435. This argument fails for two reasons. First, UofL Health waived it. *Ryan v. Hazel Park*, 279 F. App'x at 339. Second, Reno has not relied solely on temporal proximity to establish causation.

### 3. Non-Discriminatory Reason and Pretext

Once Reno has established a prima facie case for his claims, the burden shifts to UofL Health to proffer a non-discriminatory reason for firing Reno. This requisite applies to both of Reno's discrimination claims and the reason is the same for both claims. That reason is lost faith in Reno as a leader. Motion, DN 21-1 at PageID# 76–78. There is no evident discriminatory motive

10

in such a reason. As a result, the burden shifts back to Reno to proffer evidence on which a jury may conclude that the reason was not the true reason that UofL Health fired Reno, *i.e.* that UofL Health's reason is pretextual.

A plaintiff may establish pretext indirectly by showing that the employer's proffered explanation is incredible. *McDonnell Douglas*, 411 U.S. at 804–805. This may be accomplished by showing that the reason "lacked a factual basis, did not actually motivate the adverse action, or was insufficient to motivate the adverse action." *Gray v. State Farm Mut. Auto. Ins. Co.*, 145 F.4th 630, 640 (6th Cir. 2025); *Walker v. Commonwealth*, 503 S.W.3d 165, 176 (Ky. Ct. App. 2016). Here, Reno asserts that UofL Health's alleged "lost faith" did not actually motivate the decision to fire him. Instead, according to Reno, UofL Health wanted to fire him because of his anxiety, a condition that did and would require him to take FMLA leave.

To support this assertion, Reno relies on his work history at UofL Health and UofL Health's failure to follow its own progressive disciplinary policy. Reno testified at his deposition that in his three years of employment at UofL Health, not only was he promoted twice, but he was also told he was performing well in the nursing manager role. He testified that UofL Health consistently instructed its supervisors to apply progressive discipline to employees before firing them. He also testified that the policy applied to him. Yet, despite being told that his termination was the result of performance issues, Reno was never placed on any progressive improvement plan or given an opportunity to address the alleged concerns with his leadership style. Instead, UofL Health simply fired Reno outright. And it did so effectively on the heels of his having exercised his FMLA rights and having disclosed his alleged disabling condition to his supervisors. UofL Health does not dispute the timing of events, the application of its disciplinary policy to Reno, or its failure to follow its own progressive disciplinary policy. As a result, the Court finds that Reno has mustered

11

sufficient proof on which a jury could conclude that UofL Health's reason for firing him was pretextual. *Craig v. Y & Y Snacks*, 721 F.2d 77, 80 (3d Cir 1983) (employer's inconsistent application of policy coupled with the suspicious timing); *Williams v. Brown-Forman Corp.*, No. 2017-CA-002043-MR, 2019 Ky. App. Unpub. LEXIS 166, at *18 (App. Mar. 22, 2019) (suspicious timing supports an inference of discrimination).

## CONCLUSION

UofL Health has not presented the Court with sufficient grounds on which to grant summary judgment. Its only properly presented judicial estoppel argument lacks a basis in fact. Its attacks on Reno's prima facie showing are ultimately unavailing. The objective evidence of his qualifications for the nursing manager job are undisputed. And, Reno has done just enough with respect to his proof of causation and pretext to withstand UofL Health's motion. Accordingly, UofL Health's Motion for Summary Judgment **(DN 21)** is **DENIED** as to all claims.

**IT IS SO ORDERED**.

March 12, 2026

Charles R. Simpson III, Senior Judge
United States District Court